THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CALVERT ARMSTRONG, Appellant.

First Department, April 2, 1969.

*Mary Johnson Lowe* for appellant.

*Kevin P. Gilleece* of counsel (*Daniel J. Sullivan* with him on the brief; *Burton B. Roberts, District Attorney*), for respondent.

Nunez, J. Defendant appeals from a judgment entered in Supreme Court, Bronx County on November 18, 1966 convicting him after a jury trial and verdict of robbery in the first degree, grand larceny in the first degree and assault in the second degree. He was sentenced to concurrent reformatory terms not exceeding five years on each charge.

Joseph Marano, a 71-year-old resident of Bronx County, was robbed at knife point of $70 on the night of November 6, 1965. Patrolman Nargi received a description of the alleged assailant through police channels. At about 10 minutes before midnight on the evening of the occurrence Nargi observed the defendant walking north on the opposite side of Morris Park Avenue in The Bronx. He evidently concluded that the defendant fitted the description he had been given of Marano's assailant, crossed the street and approached the defendant. While being ques-

tioned by Patrolman Nargi defendant had his right hand in his right coat pocket. The police officer grabbed defendant's wrist and removed his hand from his pocket. He felt the outside of the pocket and on feeling a bulge he entered the pocket and withdrew a knife. A search of the defendant followed, and $45 was taken from his right-hand trouser pocket. He was then placed under arrest.

The court held a pretrial hearing to determine the admissibility of defendant's statements to the police officer prior to the time when the officer discovered he was carrying a knife and placed defendant under arrest. Patrolman Nargi testified as to the defendant's statements to him when he approached the defendant. He denied using any force or coercion in obtaining the answers from the defendant but admitted that he had given defendant none of the warnings required by the Supreme Court in the *Miranda* decision. The court found the defendant's statements voluntary and admissible on the ground that he was not in custody when the police officer conducted his preliminary interrogation and up to the time when the officer seized his wrist, discovered the knife and placed him under arrest. We find no fault with the court's conclusion and that ruling creates no issue on this appeal.

At the conclusion of the *Huntley* hearing counsel stipulated that the same testimony was to be considered as the evidence in a hearing on a motion to suppress the evidence seized from the defendant. The court denied defendant's suppression motion.

We note that the court's determination on the latter motion was also correct, and while neither of these rulings is the basis for the appeal at bar, we comment upon them because we are reversing the judgment of conviction on other grounds and ordering a new trial.

At the trial the only witnesses called in support of the People's case were the victim of the robbery and the arresting officer. The taking of testimony was completed in one day and summations, instructions to the jury and verdict on the following day. Thus, as defendant argues, nothing which transpired at the trial may be considered as unimportant or of diminished impact by reason of lengthy or protracted proceedings.

Mr. Marano, the victim, testified that while going home on November 6, 1965 shortly before 11:00 P.M., he had been accosted by his assailant, who placed a knife against his stomach; he was instructed to drop his money or be killed. The assailant took the victim's money and fled from the scene. Mr. Marano asserted that the scene of the occurrence was near a street light

and that he was able to and did give a description of the assailant to the police whom he called immediately. He described his assailant as being five feet two or three inches tall, a Negro wearing a black coat. Following the defendant's arrest he was taken handcuffed to the victim's home and he was identified by the victim as his assailant. He testified that $70 had been taken from him and identified the knife taken from the defendant as the weapon used in the robbery. The District Attorney concedes that on cross-examination Mr. Marano was unable to distinguish the knife which he claims the defendant had used from an identical knife introduced into evidence by the defense.

Patrolman Nargi testified that after he had been given a description of the assailant by brother officers he was walking on the north side of Morris Park Avenue at 10 minutes to midnight on the pertinent date; his attention was drawn to the opposite side of the street and to the defendant who fitted that descripion. As Nargi began to cross the street the defendant undertook the same maneuver though he executed it further west. By walking down the middle of the street the patrolman approached the suspect. He asked the defendant where he resided and defendant replied that he lived around the corner. He asked him where he came from and defendant asserted he had been drinking in the bar across the street for the preceding five hours. The officer had passed that establishment only 15 minutes earlier and had not observed the defendant. Thereafter he frisked, searched, and placed the defendant under arrest. The officer further testified that he encountered the defendant three or four blocks from the scene of the robbery. The description he had received was '' a small male Negro with a black overcoat.'' He was not sure whether he had been told that the assailant was young. Besides being the first Negro to match the description, defendant was the first Negro the officer saw in the neighborhood.

The defendant did not testify, nor did he call any witnesses.

Defendant contends that he was deprived of a fair trial because of (1) the court's failure to submit to the jury the issue of the voluntariness of his admissions, and (2) the repeated allusions of the District Attorney in summation to the fact that the defendant did not take the stand.

While the defendant objected to the reception of the admissions, he did not comply with the other necessary steps to preserve his right to raise the question on appeal, by making a specific request to charge, and, if the request is denied, by then taking a proper exception.

The Court of Appeals in *People* v. *Cefaro* (23 N Y 2d 283, 288, 289 [1968]) promulgated the rule in the following manner: "In sum we are of the opinion that the mere fact that there has been a pretrial *Huntley* hearing, without more, does not require a Trial Judge to charge on voluntariness. A Trial Judge is required to charge on voluntariness only if an issue has been raised *at the trial* by a proper objection, and evidence sufficient to raise a factual dispute has been adduced either by direct or cross-examination. Under these circumstances, if the Judge fails to charge on voluntariness, a defendant must preserve his right to raise the question on appeal by making a specific request to charge, and, if the request is denied, by then taking a proper exception."

The statement in the District Attorney's brief that "the quantum of proof can only be classified as overwhelming" is not supported by the record. The guilt or innocence of the defendant depends solely upon the correctness of the identification of the defendant by the 71-year-old victim who was robbed at knife point in the nighttime. Thus it was essential that the defendant receive a "scrupulously fair trial" as stated by our Court of Appeals in *People* v. *Esposito* (224 N. Y. 370, 372). For a trial to be scrupulously fair it must be uninfected by collateral matters such as improper conduct by the District Attorney in his summation. The record discloses an appeal to prejudice and remarks that indicate that the defendant was under the obligation to take the stand and explain his conduct. The following extracts transcribed literally from the record speak for themselves:

"It was brought out that he was in a white neighborhood and he was Negro." (162)*

"Counsel has brought out the fact that this was a white neighborhood and defendant is obviously Negro." (165)

"And what was the evidence in this case? The testimony of Patrolman Nargi and Mr. Marano. Nothing else. The rest of it is blanks. What was this defendant doing in the neighborhood? And we know he was there. Blank. (166-167)

*   *   *

"MR. BERSHADKER: Excuse me, Mr. Goldstone. May I object now on the ground that this comment calls and is in derogation of a right of the defendant not to take the stand on his own behalf.   *   *   *

"THE COURT: Now, I will allow it.   *   *   *

---

* All references are to pages of the trial transcript.

"MR. GOLDSTONE: Where had the defendant been? Blank. Where was he going? Blank. What was he doing there? Blank."

At the conclusion of summations, in the absence of the jury, the court expressed his concern about the propriety of the prosecutor's remarks quoted above. He discussed the matter with both counsel. He stated that the defendant had a right to be in the neighborhood and that the inference of the prosecutor's remarks was an attack on defendant for not having testified and that the court would have that portion of the summation reread to the jury and direct them to disregard it.

The court then had a portion of the objectionable remarks read to the jury with instructions to disregard that portion of the summation and that defendant was entitled to be in the neighborhood at any time. Nothing was said by the court at this time concerning the prosecutor's suggestions that the defendant should have provided the answers to questions posed by him by testifying. The court, without any reference to the objectionable remarks of the District Attorney, at about the middle of its charge, instructed the jury that the fact that the defendant did not testify in his own behalf was not to be used against him and then read section 393 of the Code of Criminal Procedure.

During his summation the Assistant District Attorney, on five separate occasions and over the objection of defense counsel, called the jury's attention to the fact that the defendant had not explained what he was doing in a white neighborhood, where the defendant had been prior to his arrest, where the defendant was going, why the defendant was carrying a knife, and what the defendant was doing in that bar. The learned trial court by simply charging section 393 of the Code of Criminal Procedure did not correct the damage already done. It was obvious that the only person who could have answered the questions posed by the Assistant District Attorney was the defendant. He alone could testify as to what he was doing in that neighborhood, where he had come from and where he was going. The appellant was thus placed in the untenable position of remaining silent as was his absolute right and having the jury speculate as to what his answers to the prosecutor's impermissible questions would have been.

The error complained of cannot be said to be harmless. In *People* v. *Norton* (285 App. Div. 1165 [2d Dept.]) defendants were convicted of robbery as in the instant case; the court, after stating that the evidence was sufficient to sustain the verdict, held that because the Assistant District Attorney was

permitted to make repeated references to the fact that the testimony of the complaining witness was uncontradicted and the appellants who did not testify were the only ones who could contradict it, the statements were intended to be in disregard of the spirit and letter of section 393 of the Code of Criminal Procedure and reversed the conviction.

In *Chapman* v. *California* (386 U. S. 18 [Feb., 1967]) the United States Supreme Court held that to allow a prosecutor to comment upon a defendant's failure to testify is not harmless, but substantial error requiring reversal of a conviction.

In *Griffin* v. *California* (380 U. S. 609) the Supreme Court held California's constitutional provision that " in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury " (Cal. Const., art. I, § 13) to be violative of the Fifth Amendment to the United States Constitution, and made applicable to California and the other States by the Fourteenth Amendment.

The deliberate conduct of the Assistant District Attorney was such as to thwart a fair trial. After objection was made to his remarks and after he had had time to reconsider them, he persisted in his position as follows:

" MR. GOLDSTONE: And this was unexplained. He did not say if he was visiting, if he lived there, or anything else, or anything in the course of the testimony in answer to what he was doing there. And that was the purpose, not that he did not have a right to be in the neighborhood  *  *  *

" No, he did not have to explain. But I can comment on the fact that it was unexplained." (p. 172)

In *People* v. *Blackman* (31 A D 2d 626) this court reversed a conviction for similar comments by the District Attorney in summation. (See, also, *People.* v. *Mirenda,* 23 N Y 2d 439 and cases therein cited.)

Attention has frequently been called by the Court of Appeals to the status and conduct of prosecuting officers, and it may not be amiss to quote from one of the opinions of that court. The District Attorney " is a *quasi*-judicial officer, representing the people of the state, and presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and asks no conviction through the aid of passion, sym-

pathy or resentment. By such a course, in the long run, he throws away much of his strength, because his violent and reprehensible language betrays his bias and finally weakens his influence with the jury." (*People* v. *Fielding*, 158 N. Y. 542, 547.)

Defendant for the reasons stated was denied a fair trial. The judgment of conviction should be reversed on the law, the facts and in the exercise of discretion and the case remanded for a new trial.

EAGER, J. P., McGIVERN and MARKEWICH, JJ., concur.

Judgment unanimously reversed, on the law, the facts and in the exercise of discretion and the case remanded for a new trial.