464 P.2d 903

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Frank LINDSEY, Defendant-Appellant.**

**No. 352.**

Court of Appeals of New Mexico.

Dec. 5, 1969.

Rehearing Denied Dec. 30, 1969.

Certiorari Denied Jan. 27, 1970.

E. Douglas Latimer, McAtee, Marchiondo & Michael, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Ray Shollenbarger, Mark B. Thompson, III, Asst. Attys. Gen., for appellee.

## OPINION

OMAN, Judge.

Defendant appeals from his conviction of Receiving Stolen Property, contrary to § 40A–16–11, N.M.S.A. 1953 (Repl.Vol.

6). The points relied upon for reversal are considered in their order of presentation in the brief in chief.

Defendant's first contention is that the trial court erred in denying his motion for change of venue. Very shortly after the commencement of the trial and before proceeding to select the jury, defendant orally moved for a mistrial " * * * due to the publicity given this case, particularly the publicity of yesterday, * * *"

The newspaper offered and received by the court in support of the motion contained an article entitled "Judge Rejects Move to Again Postpone Trial." The article relates to the denial of defendant's motion for postponement; the granting of a motion to limit the trial " * * * to a single incident involving a television set"; a statement by the Assistant District Attorney that " * * * he planned to use other alleged incidents to show Lindsey knew the television set was stolen"; the penalty for " * * * receiving and concealing stolen property worth more than $100 * * *"; a ruling by the court that " * * * the prosecution will not have to show how the television set was obtained"; and that no ruling was asked at that time by defendant's attorney " * * * on a motion to suppress statements Lindsey made to policeman Timothy Kline."

We are unable to find in this article anything which was prejudicial to defendant or which could have aroused public excitement or feeling against him. It is neither suggested nor argued that any of the jurors who tried the case had read the article. Under these circumstances, defendant could not have been prejudiced. See Deats v. State, 80 N.M. 77, 451 P.2d 981 (1969). Compare State v. Thayer, 80 N.M. 579, 458 P.2d 831 (1969).

The other articles to which defendant may have had reference in his motion are not before us, and we cannot speculate as to the contents thereof or the effect they may have had upon the inhabitants of Bernalillo County from which the jury was selected.

Defendant contends he " * * *. raised the issue in the only manner which was available to him under the time and circumstances of the case. * * *" and that the decisions in State v. Shawan, 77 N.M. 354, 423 P.2d 39 (1967); State v. Alaniz, 55 N.M. 312, 232 P.2d 982 (1951); State v. Montoya, 80 N.M. 64, 451 P.2d 557 (Ct.App.1968), and State v. Childers, 78 N.M. 355, 431 P.2d 497 (Ct.App.1967), required the trial court to grant the motion or hear evidence thereon.

We are not convinced the motion was presented in the only manner available under the circumstances, and the cases relied upon by defendant do not support his position. The Montoya, Childers and Alaniz cases, insofar as here material, were concerned with the effect of a timely filed motion which complied with the provisions of § 21–5–3, N.M.S.A.1953, or the amended version thereof, which appears as § 21–5–3, N.M.S.A.1953 (Supp.1969). As held in these cases, if a motion for change of venue in proper form and properly supported is timely filed, as required by § 21–5–3, supra, the trial judge must either grant the motion or conduct a hearing thereon as provided in § 21–5–4, N.M.S.A. 1953. See also, Deats v. State, supra. However, here we have an oral motion which in no way met the statutory requirements as to timeliness, form or substance.

In State v. Shawan, supra, the motion was not filed until the morning of trial, but was in proper form and otherwise complied with the requirements of § 21–5–3, supra. The motion could not have been filed sooner due to the time of the publication, which allegedly resulted in defendant's inability to obtain a fair trial in the county. The publication relied on was incorporated into the motion and was a part of the record on appeal. The defendant in that case also offered to produce witnesses to establish that substantially the same story had been broadcast by radio in the area on the day before trial. Under these circumstances, our Supreme Court held the trial court erred in summarily denying the motion.

Defendant next contends the trial court erred in refusing to quash the indictment. Defendant was indicted for receiving stolen property contrary to § 40A–16–11, supra, which, insofar as here material, defines the offense as follows:

"Receiving stolen property consists of buying, procuring, receiving or concealing anything of value, knowing the same to have been stolen or acquired by fraud or embezzlement."

The indictment charged defendant with receiving and concealing stolen property contrary to the provisions of § 40A–16–11, supra, and further charged that:

"On diverse dates between March 20, 1965, and the 19th day of March, 1968, * * * [the defendant] did buy, procure, receive, or conceal things of value knowing the same to have been stolen or acquired by fraud or embezzlement, * * *"

On May 31, 1968, defendant filed a Motion for Bill of Particulars by which he sought an order requiring the District Attorney to give each particular date between March 20, 1965, and March 19, 1968, on which defendant allegedly committed the charged offense, and a specification of " * * * the merchandise that the Defendant on each specific date did buy, procure, receive or conceal * * *"

On the same date defendant filed a Motion to Quash Indictment on the grounds:

"1. That the same does not charge an offense under the laws of the State of New Mexico.

"2. That the same is too general, vague and indefinite.

"3. That the same attempts to charge more than one offense although it does not charge an offense."

The indictment is in substantially the form prescribed by statute, and, insofar as form is concerned, no greater degree of conformity is required. Section 41–6–5, N.M.S.A.1953 (Repl.Vol. 6).

The offense was charged in the name given it by the statute; it was stated in almost the identical language of the statutory definition thereof, and certainly in terms of substantially the same meaning; and express reference was made to the statute creating the offense. The statutes require only that the offense be charged in any one of these ways. Section 41–6–7, N.M.S.A.1953 (Repl.Vol. 6).

Pursuant to the orders and directions of the trial court, the State filed a Bill of Particulars setting forth that "On or about * * *" six stated dates the defendant received certain specified articles of property. One of these dates was October 1, 1966, and the article of property allegedly received by defendant on or about that date was a "portable General Electric 12 inch Black and White Television, Serial No. P 204547 Model No. T R 814 C E B."

Defendant subsequently filed a motion to require the State to elect on which of these alleged six offenses it would prosecute defendant. On the morning of trial, as the very first order of business, the following occurred:

"MR. BEATY [defendant's attorney]: Your Honor, the first motion we bring to your attention this morning is to order the State to elect on which offense it will prosecute, and Mr. Wilson [an Assistant District Attorney] had agreed with me that we would take up only one. That's the incident involving a television set. Is that right?

"MR. WILSON: That's correct. The defendant will be—he is charged with receiving and concealing a twelve-inch G.E. portable television belonging to Sam Boren, knowing same to have been stolen.

"THE COURT: That's the offense you're trying him on?

"MR. WILSON: That's correct."

Nothing further was said concerning this particular matter. Defendant was then tried and convicted of receiving the television set knowing the same to have been stolen or acquired by fraud or embezzlement.

■ By the indictment defendant was advised of the name and nature of the offense and cited to the section of the statutes under which he was charged. By the Bill of Particulars he was informed as to the time of the alleged commission of the offense and the particular property involved. The indictment and bill of particulars are to be read as a single instrument constituting the accusation, and are to be so considered in determining the adequacy of the indictment. Norton v. Reese, 76 N. M. 602, 417 P.2d 205 (1966); State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (1936); State v. Putman, 78 N.M. 552, 434 P.2d 77 (Ct.App.1967). See also, State v. Selgado, 78 N.M. 165, 429 P.2d 363 (1967); State v. Shroyer, 49 N.M. 196, 160 P.2d 444 (1945); §§ 41–6–7, 8, 11 and 15, N.M. S.A.1953 (Repl.Vol. 6). By agreement with the Assistant District Attorney, defendant was tried only on one of the offenses with which he had properly been charged.

Defendant next contends the trial court erred in denying his motions for dismissal and a directed verdict on the ground that there was no evidence upon which the jury could have found he had knowledge that the television set was stolen.

The evidence shows defendant had the television set in his possession; he acquired this possession within a few days of the theft thereof; the fair market value of the set was $120.00 and defendant sold it for $65.00; he was constantly selling a variety of new articles for about one-half their retail price; there was no evidence of his connection with any lawful business in which such articles were sold; he took orders for some of the articles which he subsequently sold; some of these articles had "price stickers" on them, and these "price stickers" resembled those used by stores engaged in the sale of such articles; and defendant told an undercover police officer that everything he sold was stolen.

■ We are of the opinion that from this evidence the jury could reasonably find defendant knew the television set had been stolen. This is unlike the case of State v. Follis, 67 N.M. 222, 354 P.2d 521 (1960), wherein the court held " * * * that the mere possession of recently stolen property is not sufficient in and of itself to warrant the conviction of a defendant on a charge of having stolen property in his possession, * * *." We do not consider that the decision in State v. Campos, 79 N.M. 611, 447 P.2d 20 (1968) requires us to reverse, as urged by defendant.

■ Unless a defendant admits knowledge of the fact that goods he has received are stolen, this knowledge of necessity must be established by circumstantial evidence. In our opinion, the evidence here is clearly sufficient to support a finding of knowledge on the part of defendant, and is incompatible with the innocence of defendant on any rational theory. It is true defendant's wife testified that a friend of hers gave her a television set which looked like the one in question, but she was unable or unwilling to say the set given her was definitely the set in question. In any event, the jury was not required to accept this suggested source of acquisition by defendant of the set and disregard the evidence concerning the theft of the set and all the above outlined evidence which supports a finding of knowledge by defendant that the set was stolen. It was for the jury to weigh the evidence and pass on the credibility of the witness. State v. Hudson, 78 N.M. 228, 430 P.2d 386 (1967); State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967).

The next contention of defendant is that the trial court erred in admitting evidence of other stolen property.

■ Ordinarily evidence of offenses other than and independent of the offense with which the accused is charged and for which he is being tried is not admissible. State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960); State v. Lord, 42 N.M. 638, 84 P.2d 80 (1938); State v. Bassett, 26 N.M. 476, 194 P. 867 (1921); State v. Mason, 79 N.M. 663, 448 P.2d 175 (Ct.App.1968); 1 Anderson, Wharton's Criminal Evidence §§ 233–244 (12th Ed.1955); 1 Herrick, Un-

derhill's Criminal Evidence § 205 (5th Ed. 1956).

■ There are, however, distinct exceptions to this general rule. State v. Velarde, supra; State v. Lord, supra; State v. Bassett, supra; State v. Mason, supra; 1 Anderson, Wharton's Criminal Evidence, supra; 1 Herrick, Underhill's Criminal Evidence, supra, §§ 206–212. One of these exceptions is that of proof of knowledge. State v. Mason, supra; 1 Herrick, Underhill's Criminal Evidence, supra, § 208; 1 Anderson, Wharton's Criminal Evidence, supra, § 236. This exception is especially applicable to the offense of receiving stolen property, since guilty knowledge is the gist or substance of the offense. 1 Anderson, Wharton's Criminal Evidence, supra, § 236 at 516; Annot., 105 A.L.R. 1288 (1936); Franklin v. State, 100 Ga.App. 667, 112 S.E.2d 214 (1959); Smeltzer v. State, 243 Ind. 437, 185 N.E.2d 428 (1962); Lanier v. State, 172 Tex.Cr.R. 238, 356 S. W.2d 671 (1962).

As shown above, one of defendant's contentions in the trial court and on this appeal was that there was insufficient evidence to show he had the requisite guilty knowledge. As above stated, unless a defendant admits knowledge of the fact that the goods he has received are stolen, this knowledge of necessity must be established by circumstantial evidence. Often the only way this can be accomplished is by evidence of other similar offenses.

■ Defendant next contends the Assistant District Attorney made improper comments upon defendant's exercise of his constitutional privilege against self-incrimination. Comment by a prosecutor upon an accused's failure to testify constitutes reversible error. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); State v. Miller, 76 N.M. 62, 412 P.2d 240 (1966).

Three of the claimed improper comments were made during the giving of testimony by defendant's wife. She was testifying as to the possible sources of some of the articles sold by defendant. The prosecutor objected to the testimony on the grounds that she was not on trial and what she may have done was immaterial. This prompted a remark by defendant's attorney to the effect that the State had adduced a lot of evidence which was irrelevant and immaterial concerning sales by defendant. The court sustained the objection, and defendant then announced he would like to make an offer of proof. The court stated the offer could be made later, so defendant's attorney continued to question the witness.

The District Attorney next objected to a question on the ground that it was asking for the same thing to which objection had been sustained. Defendant's counsel disagreed, and the prosecutor again stated the substance of his objection in the following language:

"We are not concerned with what she does. We are concerned with what the defendant does and she is not the defendant. She cannot come in here and explain away the case on behalf of the defendant."

The court permitted defendant's attorney to ask the question and the examination of the witness continued. After a few more questions the witness was asked to explain where " * * * all of these items brought into evidence came from." She stated she could explain where they came from, and the prosecutor objected that she was " * * not the Witness to do the explaining."

The court called a short recess and then the trial resumed.

■ Although the statements of the prosecutor in making his objections may possibly be construed as suggesting that it was for the defendant to take the stand and make the explanations, we are of the opinion that considering the time and the manner in which the statements came into the case they could not reasonably be construed as comments to the jury on defendant's failure to take the stand and testify on his own behalf.

In his closing argument the prosecutor made a reference to an effort to get defendant's case in through Mrs. Lindsey, but

he continued his comments by referring to other people, and particularly to servicemen, from whom Mrs. Lindsey testified many of the articles were secured. The prosecutor's argument related to the fact that none of these people were produced as support for the testimony of Mrs. Lindsey.

■ The prosecutor, in his argument, also referred to defendant as sitting " * * here like the silver fox * * *" and looking " * * * like a Presbyterian minister * * *" We are not sure just what these references were supposed to suggest, but we are unable to construe them as comments on defendant's failure to testify on his own behalf.

Defendant concedes nothing said constituted a direct comment on his failure to take the stand, but he argues what was said amounted to the same " * * * for all practical purposes." We are of the opinion that defendant is urging a strained construction of the remarks and arguments. The trial court, who was in a far more favorable position than we to judge the propriety of the remarks and arguments, denied the motions for a mistrial, and we are not inclined under the circumstances to question its judgment. See People v. Hardy, 271 Cal.App.2d 322, 76 Cal.Rptr. 557 (1969); State v. Anaya, 79 N.M. 43, 439 P.2d 561 (Ct.App.1968).

The remarks and arguments we are here considering are not comparable to the remarks of the Assistant District Attorney in People v. Armstrong, 31 A:D.2d 447, 298 N.Y.S.2d 630 (1969). The defendant in the case now before us was not the only one who could have explained and accounted for defendant's possession of the many articles he sold, if in fact an honest exculpatory explanation thereof could be made. As already stated, Mrs. Lindsey testified the articles were procured from many persons and sources. However, none of these persons or any other evidence of legitimate purchases were produced to corroborate her testimony.

The next claimed error was that of permitting an undercover police officer to testify defendant had told the officer the articles he was selling at his place of employment were stolen.

In support of this contention defendant reiterates his arguments under his claim of error in the admission of evidence of other stolen property. This claim of error is discussed above and is rejected.

However, defendant also urges that the testimony of the officer was inadmissible under the holdings in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). His position is that the investigation had focused on him when the officer went to work in an undercover capacity at defendant's place of employment for the purpose of observing defendant's activities, and, therefore, the officer was obliged to give defendant warning of his constitutional rights before asking him any questions. Defendant admits he had not been taken into custody, and he does not contend he was in any way deprived of his freedom of action. He does contend the investigation had so focused upon him that he was protected by the Miranda and Escobedo decisions from interrogation without first being advised of his constitutional rights.

■ He must fail in this contention because whatever questions were asked of him by the police officer could not have amounted to "custodial interrogation." In the Miranda decision, "custodial interrogation" is defined as " * * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *" The court in Footnote 4 said: "This is what we meant in Escobedo when we spoke of an investigation which had focused on an accused."

The position here taken by defendant is similar to the position taken and rejected in Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

Defendant's final point is that the trial court erred in refusing his motion to suppress evidence of prior criminal convictions. He claims the court erred in two particulars: (1) in failing to properly exercise its discretion in ruling on the admissibility of defendant's prior convictions, and (2) in failing to suppress evidence of the convictions.

As to defendant's claim that the trial court failed to properly exercise its discretion in ruling on the admissibility of evidence as to his prior convictions, he relies upon State v. Waller, 80 N.M. 380, 456 P.2d 213 (Ct.App.1969) and State v. Coca, 80 N.M. 95, 451 P.2d 999 (Ct.App.1969). Nothing stated in those cases is applicable here.

In the Coca case it was said the record did not disclose the exercise by the trial court of its affirmative duty to exercise its discretion. This is not the case here. Defendant moved to suppress evidence of his prior criminal convictions on the grounds they were remote in time and not of the same nature as the offense charged. Although it is not clear what the trial court looked at pertaining to these prior convictions, it asked to " * * * see what they are." The court then announced the State was entitled to use the information as to the prior convictions for the purpose of impeachment.

Defendant did not testify, so we have no way of knowing the number or nature of the prior convictions or the dates thereof. It is clear, however, that the trial court did rule on the motion and did exercise its discretion.

In the Waller case it was said " * * * the trial court failed to properly perform its affirmative duty of weighing the legitimate probative value of the cross-examination against the illegitimate tendency to prejudice. * * * " in that it permitted " * * * questioning concerning '[a]ny unlawful act,' * * *." This is entirely different from the ruling of the trial court in the present case. It is true, as above stated, the record before us fails to reflect the nature, number or dates of the prior convictions, but the record does show the only matters considered were "prior convictions." We cannot speculate as to the nature, number or dates of these prior convictions, but we can say the record fails to support any claim the trial court held that evidence of "any unlawful act" was admissible.

Defendant's contention, that the trial court erred in failing to suppress evidence of prior convictions, is predicated upon his claim that the court, by refusing to sustain his motion to suppress evidence as to his prior convictions, placed him in an unfair dilemma, in that he was required to forego his right to testify and explain away the charge against him, or take the stand and subject himself to cross-examination concerning his prior convictions. He urges that § 20-2-3, N.M.S.A.1953, which permits the examination of a witness as to prior convictions, is unconstitutional in that it deprives an accused of due process, guaranteed by the Fifth and Fourteenth Amendments, and of trial by an impartial jury, guaranteed by the Sixth Amendment. He relies particularly upon the following language from United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968):

"It is no answer to urge, as does the Government, that federal trial judges may be relied upon to reject coerced pleas of guilty and involuntary waivers of jury trial. For the evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. * * * "

In the Jackson case the question involved was that of the constitutionality of a provision in the Federal Kidnapping Act, 18 U.S.C. § 1201(a), which provided for punishment by death " * * * if the verdict of the jury shall so recommend." The Supreme Court held this provision uncon-

stitutional in that its "* * * inevitable effect * * * is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. * * *"

The result in that case has no bearing on the question now before us.

 We concede an accused may hesitate to take the witness stand if his past criminal record is such that his credibility will probably be completely destroyed in the eyes of the jury if this record is made known to the jury. However, this in no way impairs his right against self-incrimination, his right not to be deprived of his life, liberty or property without due process of law, nor his right to a public trial by an impartial jury.

When an accused takes the witness stand he is in the same position as any other witness. Section 20-2-3, supra. He is not entitled to have his testimony falsely cloaked with reliability by having his credibility protected against the truth-searching process of cross-examination. To extend defendant's reasoning to its logical conclusion would be to exempt an accused from all attacks on his credibility. Certainly any attack on an accused's credibility by a searching cross-examination may have some deterring effect upon his willingness to waive his right against self-incrimination and to take the witness stand.

If the jury is to be fair and impartial, and if it is to accomplish its purpose of arriving at the truth, then it is entitled to consider all legitimate evidence bearing upon the issues and upon the credibility of all witnesses testifying on these issues.

Pursuant to the provisions of § 20-2-3, supra, our Supreme Court has repeatedly held that on cross-examination the State may establish through the accused the fact of his prior conviction and the name of the particular felony or misdemeanor of which he has been convicted. State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966). This view is in accord with the generally accepted rule concerning the right to test a witness' credibility by making inquiry as to prior convictions. Smith v. United States, 358 F.2d 683 (3d Cir. 1966); State v. Simmons, 148 W.Va. 340, 135 S.E.2d 252 (1964); 4 Wigmore, Evidence § 1270 (3d Ed. 1940); McCormick, Evidence § 43 (1954); 1 Herrick, Underhill's Criminal Evidence, supra, § 164.

The judgment of conviction should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.