■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND RIVERA, Appellant.—Judgment of the Supreme Court, New York County (Irving Lang, J.), rendered May 2, 1986, convicting defendant, after a jury trial, of robbery in the first degree and sentencing him as a second felony offender to an indeterminate term of from 4½ to 9 years' imprisonment, is affirmed.

Defendant raises only one point on this appeal: that certain remarks by the prosecutor represented an appeal to racial bias and require reversal. The remarks were made during the summations of this very brief trial, at the center of which was the credibility of the complainant's identification of defendant. Alex Irizarry testified that as he stood at the corner of 106th Street and Second Avenue in Manhattan on November 13, 1985, at about 1:00 P.M., he was approached by defendant, who opened his jacket, revealed a brown handle of what Irizarry assumed to be a pistol, and demanded Irizarry's money. Irizarry turned his money over to defendant, who then walked away and entered a building on 106th Street. From the day of the incident to December 4, 1985, the complainant spotted defendant numerous times in the neighborhood but was unsuccessful in keeping track of him until the police arrived on the scene. Finally, on December 4, 1985, after Police Officer Ferguson picked up the complainant, the complainant spotted defendant near the crime scene and identified him to Officer Ferguson as the person who robbed him. Although the defendant was now clean-shaven, the complainant had no trouble recognizing him. Defendant was dressed in the same green waist-length Army jacket with a lapel depicting the Puerto Rican flag and blue-hooded sweatshirt underneath that Irizarry testified defendant wore the day of the incident.

Police Officer Rivera, who prepared the complaint report on the day of the robbery, included in her report that the complainant informed her that the robber was approximately five-feet, eight-inches tall, had a long beard and a small afro hairstyle, and was dressed in a green military jacket and blue jeans. Officer Ferguson, who prepared a robbery complaint worksheet based on information provided by Officer Rivera, included a description of the blue sweatshirt. A stipulation was also introduced into evidence that prior to the date of the incident defendant had a beard.

The defendant presented no evidence. However, during summation, defense counsel highlighted the inconsistencies between the complainant's trial testimony and his Grand Jury testimony and the discrepancies in the description of the

robber contained in the various police reports to argue that a reasonable doubt existed of defendant's guilt. In her summation, the prosecutor asked the jury to consider "that the last thing you should take into account when assessing the credibility of Alex's testimony * * * [is] doesn't Alex's testimony make sense in a general way? We are talking about 106th Street and what has been testified to is an area of the city that is known as Spanish Harlem. You had an opportunity to observe Alex Irizarry here. You had an opportunity to observe his skin color. He is very light. I suggest to you that Alex could be mistaken for being white and not Hispanic. I suggest to you that you should think about perhaps Alex did not look like he belonged in that neighborhood. I suggest to you Alex as he testified is five eight and you had an opportunity to see his build, that he was slight of build. I suggest to you the combination of being a small man and perhaps not looking like he belonged in that neighborhood made him look like a target that day." An objection to this statement was overruled.

There is absolutely no place in any trial for the injection of unfounded, racially offensive arguments. We find it completely reprehensible that the prosecutor in this case urged the jury to conclude that her witness's version of the incident was inherently credible because white or white-looking persons in Spanish Harlem are likely to be targets of crime at the hands of the Hispanics there. Resorting to such aspersions against racial groups creates the grave danger that jurors will be distracted from evaluating a case strictly on the basis of the evidence presented and will instead approach the evidence from the point of view of biases triggered by racially influenced fears or prejudices. (See, e.g., People v Lowrance, 50 AD2d 769, affd 41 NY2d 303; People v Matthews, 33 AD2d 679, 680; People v Armstrong, 31 AD2d 447, 451-452.)

We would reverse were it not for the fact that the jury, judging from its requests during deliberations for testimony pertaining to the identification and for additional instructions on how they should assess the inconsistencies pertaining to the identification, exhibited an exceptionally thoughtful and thorough approach to its deliberations. Clearly, the prosecutor's statements did not distract this jury from the central issue in this case, which was not whether this robbery occurred, but whether the complainant's identification of defendant persuaded the jury beyond a reasonable doubt that defendant was the robber. Additionally, the prosecutor's racially based comments did not bear upon this central issue of

identification. Finally, we note that the inconsistencies upon which defendant relied so heavily were inconsequential, and there was overwhelming evidence of guilt. Therefore, although it causes us great dismay that such an offensive argument was permitted in this case, we cannot conclude that it deprived this defendant of a fair trial. Concur—Carro, Asch and Smith, JJ.

Sandler, J. P., concurs in a memorandum as follows: I agree with the conclusion and with almost everything set forth in the court's memorandum opinion. I agree that the Trial Assistant's passing reference to the complaining witness as someone who "could be mistaken for being white and not Hispanic", reflecting a manifestly erroneous racial stereotype, was offensive, should not have been made, and merits criticism. However, I do not believe that the Trial Assistant intended to urge that Hispanics in Spanish Harlem, for ethnic reasons, are more likely to rob white-looking persons than other Hispanics. If I believed that the Trial Assistant intended to make such an argument, or that what was said fairly could be construed as asserting such an argument, I would think that the conviction should be reversed notwithstanding the undoubted strength of the People's case.

From the transcript it seems fair to conclude that neither the defense counsel nor the experienced Trial Judge interpreted the Trial Assistant's remarks as intended to cast such a racial aspersion or as an appeal to racial prejudice. I see no reason to believe that the jury so construed the remarks or was in any way influenced by unacceptable ethnic considerations. The manifest purpose of the Trial Assistant in the excerpt set forth in the majority memorandum, however inartfully presented, was to suggest that the defendant, living in the neighborhood in which the robbery took place, was more likely to select as a target someone he did not believe lived in the same neighborhood, presumably because robbing someone who lived in the neighborhood was more likely to result in his apprehension—which is, in fact, what occurred here.

The argument that I believe the Trial Assistant was trying to make does not seem to me a good one. It seems to me to have little or no probative value in establishing the defendant's guilt, which in fact rested on the complaining witness's solid and reliable identification. Poor though I believe the argument was, and offensive as was the reference to the complaining witness possibly being mistaken as while and not Hispanic, I do not believe it accurate to suggest that the Trial

Assistant intended to cast racial aspersions or to appeal to racial prejudice.