471 P.2d 193

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**General Roger HARRISON, Defendant-Appellant.**

**No. 457.**

Court of Appeals of New Mexico.

May 28, 1970.

Certiorari Denied June 24, 1970.

J. E. Casados, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, William J. Torrington, Asst. Atty. Gen., for appellee.

## OPINION

WOOD, Judge.

Defendant appeals his conviction of voluntary manslaughter. The issues concern: (1) admission of defendant's statement; (2) admission of a knife; (3) chain of custody; (4) police reports; (5) sufficiency of the evidence; and (6) the self-defense instruction.

After a party at Theresa's house, a group went to a bar, then to another home. Theresa was then taken home and defendant, with a friend, took another girl home. Defendant, with his friend, returned to Theresa's house. The friend remained outside. Defendant entered the house with the intention of having sexual relations with Theresa. He was armed with a knife. He was on, or alongside, Theresa's bed, attempting to accomplish his objective, when he was surprised by Eliseo Baca. Baca, who had attended the party, had gone to sleep on a bed in an adjoining room.

Baca was standing in the doorway of Theresa's room. Defendant, holding the knife, left Theresa's bed and in leaving the room by the doorway, stabbed Baca. Baca died from the wound.

### *Admission of defendant's statement.*

After a hearing out of the presence of the jury, the trial court ruled admissible the testimony of a police officer concerning an oral incriminating statement made by defendant at the police station. Defendant asserts this testimony should have been excluded under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). His contentions divide into two parts: (1) questioning prior to arrival at the police station and (2) the circumstances of making the statement at the police station.

1. Questioning prior to arrival at the police station.

After daylight on the morning of the stabbing, the police located defendant at a friend's house and took him to the police station. According to defendant, he was questioned at the friend's house and was questioned while enroute to the police station in a police car. He claims that testimony concerning a subsequent oral statement should not have been admitted because no *Miranda* warnings were given to him prior to this earlier questioning.

There is no basis for this contention. Defendant testified that the questioning at the friend's house and in the police car consisted of asking him about a stabbing or a fight, and that his answers were negative —that he knew nothing about such events. These questions and defendant's answers were not used against him in any way. Defendant's own testimony makes it clear that the oral statement testified to by the police officer was not influenced by this prior questioning; that he was not prejudiced in any way. The lack of *Miranda* warnings at the friend's house and in the police car did not make the officer's testimony inadmissible. State v. Webb, (Ct. App.) 81 N.M. 508, 469 P.2d 153, decided April 24, 1970.

2. Circumstances of the statement at the police station.

According to defendant, he was taken before Detective Foote shortly after arriving at the police station. There is evidence, including a form signed by defendant, that defendant was given the *Miranda* warnings at this time. Defendant's own

testimony corroborates that some advice was given him as to his rights at this time. The testimony is in conflict as to what happened after the *Miranda* warnings were given.

According to defendant, he made no statement to Detective Foote after being advised of his rights. Defendant testified that Foote then left the room, that Officer Montoya, in the presence of Officer Frazier, suggested to defendant that he admit that he did "it" but that it was the girl's fault. According to defendant, Montoya represented himself as being defendant's friend, as having known defendant's family for a long time, and suggested that defendant cooperate so " ' * * * it will go a lot easier on you. * * *' " According to defendant, after being importuned by Montoya, he stated: " 'Okay, I did it.' " In response to Montoya's question, defendant agreed that Montoya should call Foote.

When Foote entered the room, defendant, in response to Foote's question, said he wanted to make a statement, and did not want an attorney. There was then a wait for a secretary. When the secretary arrived, defendant informed Foote that he had changed his mind; that he wanted to see an attorney before he said anything. Defendant testified that after making this statement, he was asked: " 'Where is the knife?' " and answered: " 'Well, it's the knife in Arthur's [Baty's] car.' "

According to defendant, he never talked to Foote about the party and never admitted to Foote that he stabbed anyone; that his only statement to Foote concerned the knife.

The State did not call Montoya to testify. It offered no evidence tending to rebut the alleged "con" job on defendant by Montoya. Foote testified concerning the advice given to defendant and to defendant's signing of the form acknowledging this advice.

Defense counsel then argued the law to be applied. They presented two contentions: (1) that any statement should be excluded because defendant was questioned before being given the *Miranda* warnings and (2) since defendant was questioned about the knife after indicating he did not wish to talk, the State should not be permitted to introduce any statement of defendant concerning the knife.

The trial court then pointed out that it had not been informed as to the statement sought to be excluded. The State informed the court that defendant made a general statement about the events of the preceding night and that later defendant told Foote: " 'I did it. I stabbed him, but I didn't mean to kill him.' " The State informed the court that defendant made no statement concerning a knife.

■■ The court ruled that defendant's statement was made after being advised as to his rights. There is evidence to support this ruling; the credibility of this evidence was for the trial court. State v. Briggs, (Ct.App.), 81 N.M. 581, 469 P.2d 730, decided May 8, 1970.

■ The court also ruled that since there would be no testimony that defendant made a statement concerning a knife, no issue was presented concerning the exclusion of such testimony. The correctness of this ruling is obvious. Miranda v. Arizona, supra, deals with the *exclusion* of evidence. Here, no testimony was offered in the State's case concerning any statement by defendant concerning a knife.

We have set forth the proceedings at the hearing out of the presence of the jury because of another contention of defendant. He claims he was subjected to two types of the psychological coercion referred to in Miranda v. Arizona, supra. He asserts he was offered a legal excuse for his action; according to defendant, Montoya told him to blame it on the girl. He contends he was subjected to the friendly-unfriendly or "Mutt and Jeff" act of two policemen—Montoya and Foote.

■ Defendant offered evidence tending to support the coercion claim. This evidence was not rebutted at the hearing. Yet, this contention does not benefit de-

fendant. His main contentions in argument to the court were the two contentions discussed above. There is a reference to the "Mutt and Jeff" procedure, and to the "bad guy" and the "good guy," but the record clearly shows the trial court was never clearly alerted to the contention now urged. Defendant did not invoke a ruling of the trial court on the issue of psychological coercion. Accordingly, it presents no issue for review in this appeal. State v. Paul, 80 N.M. 521, 458 P.2d 596 (Ct. App.1969); compare Dahl v. Turner, 80 N.M. 564, 458 P.2d 816 (Ct.App.1969). Defendant did not point out the error now claimed at the time the alleged error occurred. He has waived this contention, State v. Duran, 80 N.M. 406, 456 P.2d 880 (Ct.App.1969).

*Admission of the knife.*

■ A knife, allegedly the one used in the stabbing, was admitted into evidence. Defendant claims it should not have been admitted because it was obtained by an illegal search. The record does not support this claim; rather, it shows there was no search. See State v. Blackwell, 76 N.M. 445, 415 P.2d 563 (1966). Baty testified that he waited for defendant when defendant returned to Theresa's house in his attempt to "mess with her." According to Baty, when defendant left Theresa's house, he had a knife in his hand, and left this knife on the console between the front seats of Baty's car. Baty testified that after defendant got out of the car, he put the knife under the seat and later turned it over to a policeman. Officer Last testified that in participating in the investigation of the stabbing he talked to Baty and went with Baty to his car. Last testified that Baty opened the door to his car, reached under the seat on the driver's side, pulled out a knife and handed it to him.

Defendant also claims that seizure of the knife was the fruit of improper questioning. He relies on defendant's testimony to the effect that he was questioned about, and made a statement concerning the knife,

after indicating he did not want to talk until he conferred with a lawyer. The issue here does not involve this asserted statement. It involves knowledge of the knife's whereabouts as a result of the alleged questioning in violation of Miranda v. Arizona, supra.

■ This "poisoned fruit" contention is based on the assumption that the police were able to "seize" the knife as a result of defendant's asserted statement to the police. There is testimony which conflicts with this assumption. The record shows that Baty had been questioned by the police; that Baty took Officer Last to his car and voluntarily turned the knife over to the officer. With conflicting evidence on the issue, the record does not compel a holding, as a matter of law, that the police came into possession of the knife as a result of knowledge obtained in violation of Miranda v. Arizona, supra. The trial court was aware of the conflicting claims when the knife was offered into evidence. It resolved the conflict in admitting the knife as evidence.

*Chain of custody.*

■ Defendant claims the articles of clothing taken from the body of deceased, and the knife, were erroneously admitted into evidence over his objection. He states: " * * * The custody of the knife was unaccounted for from the time it was turned into the evidence room until someone sent a knife to the F.B.I. in Washington, D. C. * * *" The same contention is made concerning the clothing.

The claim is based on the testimony of a federal agent that he received the exhibits by registered mail from the Albuquerque Police Department and that the sender was Deputy Police Chief Swallows. In contending there was no "custodial continuity" before the trial court, defendant asserted: " * * * They say that the Albuquerque Police Department sent these things, but the person who sent them from the Albuquerque Police Department has not testified and I believe they are missing a link."

. The claim is not supported by the record. Detective Foote testified that he took the knife from the evidence room. Officer Richardson testified that he turned the articles of clothing over to Detective Foote. Foote testified that he mailed the knife and the clothing to the F.B.I. Foote's evidence answers defendant's contention concerning a missing link in the chain of custody. Here there is no absence of evidence as in Apodaca v. Baca, 73 N.M. 104, 385 P.2d 963 (1963). The federal agent's testimony conflicts with the testimony of Foote. The conflict did not, however, render the evidence inadmissible.

Defendant also objected to the admission of the exhibits because " * * * there is no telling of whether or not they have in any way been altered, * * *" However, Officer Richardson testified that the clothing exhibits were in essentially the same condition as when he recovered them except the stains on the clothing were redder when he obtained the clothing and the clothing had been subsequently torn. There is no evidence, one way or another, concerning any alteration in the knife.

Here, changes in the clothing were identified. There is no indication of tampering with the knife. People v. Riser, 47 Cal.2d 566, 305 P.2d 1 (1956) states:

" * * * when it is [only] the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight. * * *"

■ Here, there is no indication of tampering with the knife. The changes in the clothing were unexplained, but defendant does not point to any indication that the changes resulted from tampering. Any doubt concerning the exhibits went to the weight to be accorded them. People v. Riser, supra. The trial court did not err in admitting the exhibits.

*Police reports.*

Prior to trial, various information was supplied to defendant by the State. The record shows that defendant knew the contents of answers given by Detective Foote in response to specific questions. While the record is not clear, it appears to have been Foote's testimony before the Grand Jury. Defendant obtained a bill of particulars from the State. He obtained a copy of the autopsy report on decedent. The State stipulated it would turn over all of its "real evidence" for inspection by defendant and would cooperate so that defendant might interview Theresa and view her home (where the stabbing took place).

In addition to the foregoing, defendant asked the court to order the District Attorney's office and the Albuquerque Police Department " * * * to turn over to defendant for copying and inspection, any and all reports made by any member of the Albuquerque Police Department. * * *" Responding, the prosecutor stated: " * * * we are willing to produce the police report where the verbal conversation with the police officer is contained, but we do object to producing any [all?] of the police reports, records or communications. * * *" The trial court denied this pretrial motion. Defendant contends this ruling was error.

Defendant recognizes that State v. Tackett, 78 N.M. 450, 432 P.2d 415, 20 A.L.R.3d 1 (1967), cert. denied 390 U.S. 1026, 88 S. Ct. 1414, 20 L.Ed.2d 283 (1968) requires a showing of unusual circumstances before he would be entitled to examine the police reports. See State v. Turner, (Ct.App.), 81 N.M. 571, 469 P.2d 720, decided April 17, 1970. He claims "unusual circumstances" are established by asserting that he had no access " * * * to the facts stated in the police report * * *" and because such access " * * * was necessary to a proper preparation of his defense. * * *" State v. Tackett, supra, answers defendant's contention. It states that to be granted the right to inspect, defendant " * * * must show something more than a mere desire for all the information obtained by the prosecution * * * and a blanket request will not be granted, * * *"

■ Considering that the State had made available or agreed to make available various items of information, including a portion of the police reports, defendant's motion for general access to the police reports was no more than a blanket request. The motion was properly denied. State v. Tackett, supra.

Defendant also claims the police reports are public records as defined in § 71–6–2, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1969) and that he has a right to inspect public records under § 71–5–1, N.M.S.A. 1953 (Rpl.Vol. 10, pt. 2). The State's response is that these statutory sections do not contemplate the inspection of police records.

We doubt that a right of inspection of police records, compiled during the investigation of a crime, exists under § 71–5–1, supra, particularly when the criminal charge is still pending. See Moore v. Bd. of Chosen Freeholders of Mercer County, 76 N.J.Super 396, 184 A.2d 748 (1962); Lee v. Beach Pub. Co., 127 Fla. 600, 173 So. 440 (1937); compare § 64–17–13, N.M.S.A. 1953 (Repl.Vol. 9, pt. 2, Supp. 1969); Report of Attorney-General, New Mexico, 1947–48, opinion 5074. However, we do not decide whether defendant had a right under § 71–5–1, supra, to inspect the police records. Rather, we decide defendant's claim by assuming such a right exists.

■ In at least two instances, defendant cross-examined witnesses concerning their prior statements to the police. The questions asked showed that defendant had copies of their statements. The cross-examination of Officer Richardson and Detective Foote showed that defendant had seen the police report. The record shows inspection of the police records by defendant. If defendant had a right to inspect the police records under § 71–5–1, supra, he has been accorded that right.

■ At oral argument, defendant conceded that the police reports were available to him at trial. His contention at the argument was that the records should have been made available to him earlier; specif-

ically, at the time of his pre-trial motion. This argument does not involve § 71–5–1, supra. Rather, it involves the reasonableness of the time of the inspection. See § 71–5–2, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2). Since there is nothing in the record indicating when the records became available to defendant, and no showing of any prejudice resulting from the alleged delay in making the records available, we are unable to say that § 71–5–2, supra, if applicable, was violated.

*Sufficiency of the evidence.*

Five forms of verdict were submitted to the jury—first degree murder, second degree murder, voluntary manslaughter, involuntary manslaughter and not guilty. Defendant asserts his conviction of voluntary manslaughter is not supported by the evidence. He claims he should be discharged " * * * notwithstanding the fact there is evidence showing appellant guilty of first or second degree murder. * * *" He contends the evidence " * * * does not establish that degree of fear or terror necessary to reduce the crime of murder to the crime of manslaughter. * * *"

It is voluntary manslaughter when the killing is committed upon a sudden quarrel or in the heat of passion. Section 40A–2–3, N.M.S.A.1953 (Repl.Vol. 6). To reduce the killing from murder to voluntary manslaughter, State v. Kidd, 24 N.M. 572, 175 P. 772 (1917), states:

"* * * All that is required is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, and to exclude malice, and to render the defendant incapable of cool reflection. * * *"

State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968).

■ In determining whether the verdict of voluntary manslaughter is support-

ed by substantial evidence, we view the evidence in a light most favorable to the State, and with all permissible inferences indulged in support of the verdict. State v. Lopez, supra. Considering only a part of the evidence, it is substantial and supports the jury's verdict. Defendant went to Theresa's house after the party was over with the intention of having sexual relations with Theresa. He entered a darkened house, found Theresa in bed and while armed with a knife, attempted to carry out his purpose. Decedent suddenly entered the room. Defendant thereupon started to leave. Decedent grabbed at defendant and in turn was stabbed by defendant. From the evidence, the jury could decide the killing was upon sudden quarrel or the heat of passion.

State v. Kidd, supra, states:

"* * * The line of demarcation between a homicide which amounts to voluntary manslaughter and one which amounts to justifiable homicide in self-defense, is not always clearly defined and depends upon the facts of each case as it arises. Those facts are for the jury, under instructions from the court, laying down the principles of law governing the same, as was done in this case."

Concerning the foregoing quotation from Kidd, State v. Lopez, supra, states:

"From this it is quite apparent that when facts are present which give rise to a plea of self-defense, it is not unreasonable that if the plea fails, the accused should be found guilty of voluntary manslaughter." (Citation omitted)

Here, the jury rejected the claim of killing in self-defense. It was not unreasonable that defendant should be found guilty of manslaughter.

*Self-defense instruction.*

Defendant objected to the instruction on self-defense. He asserted the instruction "* * * requires the Defendant to prove that in fact he acted or he killed in self-defense, whereas, the proper statement of the law is that the Defendant is required only to raise a reasonable doubt as to the issue of self-defense, * * *"

■ Defendant, of course, did not have the burden of proving that he killed in self-defense. All he was required to do was produce evidence which would raise a reasonable doubt in the minds of the jurors. State v. Cochran, 78 N.M. 292, 430 P.2d 863 (1967); State v. Pruett, 24 N.M. 68, 172 P. 1044 (1918). The instruction does not state that defendant is required to prove that he acted in self-defense. Defendant asserts this was the effect of the instruction because it contains several references to the word "must."

The references to "must" occur in the second and third paragraph of the instruction where the justification for the taking of human life is explained. For example, the jury is told that "* * * the slayer, as a reasonable man, *must* have reason to believe and *must* believe that he is in danger of receiving great bodily harm; * * *", that "* * * the circumstances *must* be such as to excite the fears of a reasonable man placed in a similar position, * * *", that "* * * [t]he danger *must* be apparent, and *must* be present and imminent, or *must* so appear at the time to the slayer as a reasonable man, * * *" (Emphasis added).

■ Defendant asserts the use of "must" in the instruction forced "* * * the jury to conclude that those elements [necessary for the killing to be in self-defense] *must* be proved. * * *" We disagree. The instruction could have been worded to avoid the frequent use of "must." Compare State v. Maestas, 63 N. M. 67, 313 P.2d 337 (1957). Nevertheless, decisions of the New Mexico Supreme Court dealing with the elements of self-defense have consistently referred to elements which "must" exist if self-defense is to be submitted to the jury. State v. Parks, 25 N.M. 395, 183 P. 433 (1919); State v. Calhoun, 23 N.M. 681, 170 P. 750 (1917); State v. Chesher, 22 N.M. 319, 161 P. 1108 (1916). The instruction did no more than

inform the jury of the necessary elements. The instruction makes no reference to a burden of proof in regard to self-defense.

The jury was not instructed that defendant did not have to prove that he killed in self-defense and was not instructed that all defendant was required to do was raise a reasonable doubt as to whether the killing was in self-defense. Defendant's requested instruction would have so informed the jury. Defendant contends the refusal of the instruction was error.

It would not have been error to instruct the jury as requested by defendant. Compare State v. Roybal, 33 N.M. 187, 262 P. 929 (1927). The issue is whether the trial court erred in refusing to instruct on the burden of proof concerning self-defense. This is not a case of conflicting instructions. See State v. Sherwood, 39 N.M. 518, 50 P.2d 968 (1935). Rather, it is a case where the State's burden of proof was expressly referred to at least three times; where the instruction on "reasonable doubt" refers to the presumption of innocence and states: "* * * in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. * * *" Another instruction informed the jury: "Also, if the evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt. * * *" The jury was also instructed to consider the instruction as a whole; to regard each in the light of all others.

"* * * When a correct general instruction as to reasonable doubt is given, it need not be repeated in dealing with each element of the case." (Citation omitted). State v. Burrus, 38 N.M. 462, 35 P.2d 285 (1934). The trial court did not err in refusing defendant's request to instruct on reasonable doubt in connection with defendant's theory of self-defense. State v. Brooks, 59 N.M. 130, 279 P.2d 1048

(1955); State v. Burrus, supra; State v. Roybal, supra.

Affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.