474 P.2d 503

**STATE of New Mexico, Plaintiff-Appellee,**
v.
**Larry Thomas SERO, Defendant-Appellant.**
**No. 485.**

Court of Appeals of New Mexico.
Sept. 4, 1970.

Mack Easley, Easley & Reynolds, Hobbs, for defendant-appellant.

James A. Maloney, Atty. Gen., Mark B. Thompson, III, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Convicted of receiving stolen property, § 40A–16–11, N.M.S.A.1953 (Repl.Vol. 6), defendant appeals. The first issue concerns the severance of multiple counts. There are three issues concerning search and seizure. The fifth issue concerns evidence of prior convictions. We discuss each issue and affirm.

*Severance.*

The criminal information charged defendant with three counts of receiving stolen property. Each count charged a separate offense—the stolen property allegedly received in violation of the statute was charged to have been stolen on different dates from different persons or organizations.

By motion in advance of trial, defendant asked the court to order the District Attorney to elect a count upon which to proceed to trial or to order the counts severed for trial purposes. Since defendant was charged with separate, distinct and unrelated offenses, he asserts he was prejudiced in his defense against the three charges. He claims he was entitled to go to trial on only one count and the trial court erred in denying his motion.

A similar contention was presented in State v. Gunthorpe, 81 N.M. 515, 469 P.2d 160 (Ct.App.1970). There, this court pointed out that severance was a procedural question addressed to the trial court's discretion, that the trial court's actions would be upheld " * * * unless an abuse of discretion is shown which results in prejudice to the defendant." See § 41–6–38, N.M.S.A. 1953 (Repl.Vol. 6). The opinion quotes State v. Brewer, 56 N.M. 226, 242 P.2d 996 (1952), for the view that proof of legal prejudice is not shown by the fact that evidence of two separate crimes was before the jury.

Defendant, however relies on State v. Paschall, 74 N.M. 750, 398 P.2d 439 (1965), where defendant was charged in four separate informations with six separate crimes. There, the charges alleged offenses regarding the property of different owners, the offenses occurred at different places and times and the offenses were not provable by the same evidence. Further, the charges involved different types of offenses. It was held " * * * that in the very nature of things it cannot be said that the defendant in this case was not prejudiced in his defense by consolidation for trial of these separate charges. * * *" The various convictions were reversed.

■■■ Here, the "very nature of things" does not establish that defendant was prejudiced in defending against three counts of receiving stolen property at the same trial. Possession of the stolen property is a circumstance to be considered in determining whether the offense has been committed. State v. Follis, 67 N.M. 222, 354 P.2d 521 (1960). In this case proof as to defendant's possession under each count was, largely, provable by the same evidence. In addition to proof of possession, there must be proof that defendant knew the property was stolen. State v. Follis, supra. Such knowledge is usually established circumstantially and may be established by proof of defendant's possession of other stolen property. State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct.App.1969), cert. denied 398 U.S. 904, 90 S.Ct. 1692, 26 L.Ed.2d 62 (1970). Thus, evidence of possession under each count would be admissible on the issue of defendant's knowledge under all counts.

Further, the results show the jury was able to follow the evidence and apply it to each count; it acquitted defendant of two of the three charges. Compare State v. Turney, 41 N.M. 150, 65 P.2d 869 (1937); State v. Jones, 39 N.M. 395, 48 P.2d 403 (1935). State v. Paschall, supra, does not

require us to hold that defendant, as a matter of law, was prejudiced in his defense.

Accordingly, we follow State v. Gunthorpe, supra, and require a showing of prejudice. None has been shown. Thus, we have no basis for holding that the trial court abused its discretion in denying the motion to elect or sever.

### Search and seizure.

There are three separate issues under this point.

(a) The first issue—was there a search and was there consent to search?

Defendant owned and operated a Phillips Service Station at the corner of Marland and Turner Streets in Hobbs, New Mexico. One of his employees was Jim Poppinhouse.

Poppinhouse had previously worked for C & C Motors and had also worked for another company that had been burglarized. Learning of the burglary at C & C Motors, Poppinhouse telephoned the police and asked them to check his tools. His purpose was to avoid any suspicion that he was involved in the burglaries.

Responding to Poppinhouse's call, police officers came to defendant's service station directly from their investigation of the break-in at C & C Motors. Poppinhouse took the officers to the garage portion of the building where he identified his tools and where the officers examined them.

Two rooms had been partitioned off inside the garage. The examination of Poppinhouse's tools took place near a window in the wall of one of the partitioned rooms. The officers saw some unidentified property through the window. Subsequently, Poppinhouse opened the door to the second partitioned room. The officers entered and saw items which appeared to have been taken in the C & C Motors break-in. One officer was kneeling beside one of the items, looking at it, when defendant arrived and asked what was going on. At this point none of the items viewed by the officers had been seized. At this point everyone left the garage, and

one of the officers went for a search warrant.

This first search and seizure issue is concerned with what the officers had viewed in the partitioned rooms prior to defendant's arrival and the validity of their view. Defendant claims the officers had searched without a search warrant and without the consent of anyone authorized by defendant to consent. Postulating an illegal search, defendant claims that all items subsequently seized under the search warrant should have been suppressed as evidence.

Defendant raised this issue by motion prior to trial. The trial court held an evidentiary hearing and denied the motion. Attacking the trial court's ruling on the evidence presented, defendant asserts: "No reasonable interpretation of the evidence would sustain any other view than that the officers deliberately searched these two rooms to see if they contained stolen articles. * * *" We disagree.

There were two factual issues resolved by the findings of the trial court. The first is whether there had been a search by the officers. If there had been a search, the second factual question is whether anyone in authority consented to the search.

The trial court found that the officers went to the garage only upon the invitation and insistence of Poppinhouse; that what the officers saw through the window of the first partitioned room (from the garage proper, where they were inspecting Poppinhouse's tools), was in plain view. It found that Poppinhouse opened the door to the second room and the officers followed him into the room. " * * * It was only natural that the officers would follow him since they were there to see everything he had asked them to come to see. * * *" It found that Poppinhouse was the manager and had full authority over and access to the garage in defendant's absence. Substantial evidence supports these findings and the determination by the trial court that there was no search and that a person in authority

·consented to the officers being at the places where they viewed the stolen articles.

The trial court's findings being supported by substantial evidence, there is no factual basis for this first search and seizure claim. See State v. Blackwell, 76 N.M. 445, 415 P.2d 563 (1966); State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct.App.1970); State v. Miller, 80 N.M. 227, 453 P.2d 590 (Ct.App.1969).

(b) The second issue—validity of the search warrant.

The officer obtained the search warrant, returned to the service station and served it on defendant. Various items, identified as property of C & C Motors taken in the break-in, were seized. Shortly before the trial began, defendant attacked the validity of the search warrant. No evidence was offered in support of this attack. However, the attack on the validity of the warrant was renewed during the trial and evidence going to the question of its validity was introduced at the trial. The trial court denied defendant's motion. that the search warrant was invalid.

█ In this appeal, defendant asserts the search warrant is invalid for two reasons. Both go to constitutional and statutory provisions requiring a search warrant to particularly describe the place to be searched. U.S.Const. Amend. IV, N.M.Const. art. II, § 10, § 41–18–2, N.M. S.A.1953 (Repl.Vol. 6, Supp.1969). Under these provisions, a description is sufficient if the officer can, with reasonable effort, ascertain and identify the place intended to be searched. Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925). The description, however, must be such that the officer is enabled to locate the place to be searched with certainty. State v. Lemon, 212 So.2d 322 (Fla.Ct.App. 1968). The description " * * * should identify the premises in such manner as to leave the officer no doubt and no discretion as to the premises to be searched. * * *" People v. Smith, 20 Ill.2d 345, 169 N.E.2d 777 (1960).

█ Defendant asserts the search warrant fails to particularly describe the place to be searched. One of his arguments is directed to the failure of the search warrant to identify the city where the search was to be held; the description in the warrant says only "Phillips Service Station at 510 S. Turner." The following authorities are pertinent: Ward v. State, 293 P.2d 618 (Okl.Cr.1956); Doyle v. State, 49 Okl.Cr. 422, 295 P. 237 (1931); Commonwealth v. McCleary, 76 York 105 (Pa.Quarter Sessions 1962); Commonwealth v. Battipaglia, 19 Cambria 30 (Pa. Quarter Sessions 1952); Bragg v. State, 155 Tenn. 20, 290 S.W. 1 (1927); Armstrong v. State, 150 Tenn. 416, 265 S.W. 672 (1924); Helton v. State, 164 Tex. Cr.R. 488, 300 S.W.2d 87 (1957); Anderson v. State, 192 Wis. 352, 212 N.W. 628 (1927). We do not decide whether the warrant was void for failure to name a city in its description. This issue was never presented to nor ruled on by the trial court. No ruling of the trial court having been invoked on this issue, it presents no issue for review in this appeal. State v. Harrison, 81 N.M. 623, 471 P.2d 193 (Ct. App.), decided May 28, 1970, and cases therein cited.

█ Defendant's second ground for the asserted invalidity of the search warrant is that it identifies only the Phillips Service Station and does not particularly describe the garage. " * * * [I]t was directed to Phillips Service Station, when actually the garage at the back of the Phillips Service Station was a portion of the search. * *" " * * * [T]he search warrant does not cover the garage building, * * *"

Two factual questions are implicit in defendant's contention—whether there was more than one building on the premises and whether there was multiple occupancy of the premises.

Evidence favorable to defendant is: there was a wall between the garage and service station portions of the building; there was no door between the garage and service station portions and the only open-

ing in the wall was for an air hose of less than one inch diameter. There is an inference that the officers knew of this "solid" wall before application was made for the search warrant and knew that, formerly, the garage portion had been separately occupied. In addition, there is evidence that the garage had a separate address and had a separate occupancy a few months prior to the events under consideration.

Evidence favorable to the State is: defendant was a tenant of the entire building (both service station and garage portions), and defendant stored items in the garage that were used in the service station. From outward appearances, the garage appeared to be a portion of the service station—the defendant and photographs in evidence confirm this. Neither of the officers involved up to the time the search warrant was obtained knew that the garage portion had a separate address.

The cases cited by defendant concerning multiple buildings on the premises do not require discussion because of the facts. Here, there is no question that we have only one building. The evidence does raise a question of multiple units in that building—the "solid" wall and former separate occupancy are undisputed and there is evidence of separate addresses for the service station and garage portions. On the question of multiple occupancy, we rely on the following from Annot., 11 A.L.R.3d 1330 (1967):

§ 6, at 1341: "The general rule that a search warrant directed against a multiple-occupancy structure must particularize respecting the subunit to be searched is usually held inapplicable where the premises in question are occupied by several families or persons in common rather than individually, or where it is shown that notwithstanding the joint occupancy, defendant was in control of the whole of the premises.

"* * * *

§ 7, at 1343: "In a number of cases, search warrants directed against multiple-occupancy structures have been held

valid despite the fact that no particular subunit was specified where it appeared that the entire premises, rather than a particular subunit, was under suspicion of illegal activity.

"* * * *

§ 8, at 1344: "An exception to the rule that a search warrant directed against a multiple-occupancy structure must specify the subunit to be searched has been recognized in some cases where the multiunit character of the premises was not externally apparent and was not known to the officers applying for and executing the warrant."

Here, while the building was capable of multiple occupancy the undisputed fact is that defendant occupied both the service station and garage portions of the building. He controlled the entire building. It is also undisputed that the entire building was under suspicion. The officer's affidavit for the search warrant asked for a warrant to search "* * * all of the building/s [sic] at this location." It is undisputed that the multiunit character of the building was not externally apparent. The only contrary inference is that the officers knew the building had two units. This inference does not require a holding that the search warrant was invalid.

We hold that the description, "Phillips Service Station at 510 S. Turner," did not limit the search warrant to the service station portion of the building; that the description sufficiently described the entire building as the place to be searched. The evidence of multiple units in that building did not render the warrant invalid because in fact there was no multiple occupancy, defendant controlled the entire building and the Phillips station was the only occupant.

In so holding, we note another contention advanced by the State. It is that the affidavit was expressly incorporated into the search warrant by reference, and the description in the affidavit sufficiently described the entire building. We express no opinion either as to whether the entire

affidavit was incorporated, or whether a description by reference meets constitutional and statutory requirements. See, generally, Annot., 11 A.L.R.3d, supra, § 10, at 1346.

On the contentions submitted to it, the trial court did not err in refusing to hold the search warrant invalid.

■ (c) The third issue—search and seizure at defendant's home.

After the items were seized from the service station building, defendant claims the officers conducted a search of defendant's home and seized various items during that search. This alleged search was not conducted under authority of a search warrant and was not incidental to defendant's arrest. Its initial validity depends upon whether defendant consented to the search.

There is no dispute as to the fact of defendant's consent. The issue is whether the consent was no more than acquiescence to a claim of lawful authority. Defendant relies on State v. Lewis, 80 N.M. 274, 454 P.2d 360 (Ct.App.1969), where the defendant consented to a search only after the officer stated he would get a search warrant anyway.

Here, the facts are different. There is evidence that defendant told officers of articles acquired at the same time as those found in the service station search; that these articles were at his home; that he wanted the officers to see them. There is evidence that defendant insisted that the officers go to defendant's home; that the officers advised defendant of his constitutional rights. All of this occurred before a search warrant was mentioned. When mentioned, it was in the context that defendant need not permit the officers to enter his home; that a search warrant could be obtained. There is evidence that, in spite of the officers' cautionary remarks, defendant insisted upon the officers going to defendant's home and viewing articles which were taken in the C & C Motors break-in.

The evidence is opposite to that in State v. Lewis, supra. The evidence is substantial and supports the trial court's finding that the search was voluntary, at the insistence of defendant, and was not acquiescence to a claim of lawful authority.

Although the initial entry into defendant's home was at defendant's insistence, defendant alleges that the officers undertook a general search after entry. He contends there was no consent to a general search. The trial court's finding as to the articles seized at defendant's home is that defendant " * * * led them to all the articles except the Underwood tool box, and it was sitting on the floor in plain view. * * *" This finding is supported by substantial evidence.

■ Defendant's complaint of a general search then goes to the assertion that the officers rummaged in various drawers and that this rummaging was beyond the scope of defendant's consent. Defendant does not identify anything seized as a result of the "rummaging." Thus, no issue is raised as to the exclusion of improperly seized evidence. See State v. Harrison, 81 N.M. 623, 471 P.2d 193, decided May 28, 1970, supra. There is no merit to this third search and seizure claim.

*Evidence of previous convictions.*

■ Defendant's pre-trial motion asserted that previously he had been convicted of criminal offenses; that he believed that if he testified at his trial the prosecutor would cross-examine him concerning these convictions. Section 20–2–3, N.M.S.A.1953 authorizes such questioning. State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966); State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969).

Defendant's motion asserted, however, that such questioning would violate his constitutional privilege against self-incrimination and would deprive him of due process of law. State v. Lindsey, supra, held adverse to defendant on these con-

**24**

stitutional claims. Compare De Vita v. Sills, 422 F.2d 1172 (3rd Cir. 1970).

The judgment and sentence are affirmed. It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.