496 P.2d 1096

STATE of New Mexico, Plaintiff-Appellee,

v.

Rumaldo DURAN, Defendant-Appellant.

No. 823.

Court of Appeals of New Mexico.

April 14, 1972.

Certiorari Denied May 4, 1972.

Joseph D. Beaty, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Thomas Patrick Whelan, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of murder in the second degree. Section 40A–2–1,

N.M.S.A.1953 (Repl.Vol. 6). The issues concern: (1) admissibility of lay testimony concerning the condition of the victim's right arm; (2) the constitutionality of § 20–2–3, N.M.S.A.1953 (Repl.Vol. 4); (3) admissibility of rebuttal testimony as to prior statements and conduct of defendant; and (4) the propriety of an instruction on implied malice.

Defendant had been going with Pamela Torres, a stepdaughter of Nash Lucero. Accompanied by two of his brothers, he went to the Lucero residence. Judy Jones, another stepdaughter of Nash, came out and conversed with defendant. During this conversation, the brother driving the Duran car raced its engine. Nash came out of the house and asked that they be quiet.

Benerito Lucero, Nash's brother, followed Nash from the house. After Nash's request for quiet, the Duran brothers started to leave. Benerito made a remark and the Duran brothers got out of their car. A fight ensued between two of the Duran brothers (one of which was defendant) and Benerito and Nash. Benerito received two stab wounds in the fight, one of which caused his death.

The evidence is in dispute as to what Benerito said and as to the details of the fight. However, there is substantial evidence that defendant had a knife and used that knife to stab Benerito.

*Admissibility of lay testimony.*

Nash Lucero's wife testified that Benerito had "one bad arm;" that he "didn't have no strength," and that he had had an operation on his elbow. Nash Lucero also testified to the operation and that Benerito couldn't work very much because: "His right arm, he couldn't handle that very well."

■ Defendant claims this evidence was inadmissible. " * * * as the witnesses were not qualified to express an opinion as to the extent the impairment interfered with the Decedent's ability to use the arm in a fight. * * *" The answer is that neither witness expressed such an opinion. When the State started to elicit such an opinion, the defense objection was sustained.

■ Defendant also claims the evidence set forth above was inadmissible " * * * because no evidence was offered as to the capacity of the victim to engage in physical combat * * *" and because there is no evidence that either defendant or his brother knew of the condition or considered it when they responded to Benerito's remark and allegedly threatening gestures. Neither of these claims were presented to the trial court; they are raised here for the first time. Accordingly, they will not be reviewed. State v. Foster, 82 N.M. 573, 484 P.2d 1283 (Ct.App.1971); State v. Harrison, 81 N.M. 623, 471 P.2d 193 (Ct.App.1970).

*Constitutionality of Section 20–2–3, supra.*

■ Section 20–2–3, supra, permits a witness to be questioned as to prior convictions. By pre-trial motion, defendant requested the court to hold § 20–2–3, supra, to be unconstitutional. Defendant states this motion was denied when the trial court " * * * granted Defendant's Motion For Discovery of Prior Convictions. * * *" We accept defendant's characterization of the record.

Defendant, during his direct examination at trial, testified to a prior conviction. He states that he was forced to introduce this evidence himself in order to diminish the prejudicial effect of the State doing so during his cross-examination. His claim is that § 20–2–3, supra, violates due process because testimony as to prior convictions prejudices his right to testify in his own behalf. He cites McCormick, Law of Evidence, at 93–94 (1954) in support of his claim of prejudice.

Aware that State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct.App.1969), cert. denied, 398 U.S. 904, 90 S.Ct. 1692, 26 L.Ed. 2d 62 (1970) is contrary to this contention, defendant seeks to distinguish *Lindsey* on the basis that it " * * * did not relate to the balance between Defendant's rights

to testify and the State's rights to impeach. * * *" We disagree. *Lindsey* states:

"We concede an accused may hesitate to take the witness stand if his past criminal record is such that his credibility will probably be completely destroyed in the eyes of the jury if this record is made known to the jury. However, this in no way impairs his right against self-incrimination, his right not to be deprived of his life, liberty or property without due process of law, nor his right to a public trial by an impartial jury.

"When an accused takes the witness stand he is in the same position as any other witness. Section 20-2-3, supra. He is not entitled to have his testimony falsely cloaked with reliability by having his credibility protected against the truth-searching process of cross-examination. * * *"

See State v. Sero, 82 N.M. 17, 474 P.2d 503 (Ct.App.1970).

*Rebuttal testimony as to prior statements and conduct of defendant.*

On cross-examination, the State asked defendant if he had seen Judy Jones the night before the fight. Defendant stated he thought it was a week before the fight. Defendant was asked, and he denied, that he "pulled a knife" at this meeting with Judy. He was asked, and he denied, that he had mistaken Judy for Pamela. He was asked, and he denied, that he had threatened to kill anyone he found with Pamela. On rebuttal, Judy testified that on the evening before the fight defendant was holding a knife five or six inches long, that she asked what he was going to do with it and that defendant said: " * * * he thought Pam was with some other guy and that he was going to get the guy. I asked him if he was going to hurt Pam and he said no, that he wouldn't hurt Pam."

■ Defendant contends Judy's testimony about the knife was inadmissible. We disagree. The testimony as to the size of the knife at his meeting with Judy

was material to the size of the knife that defendant had on the night of the fight. The size of the knife was material because of the pathologist's testimony as to the depth of the fatal wound and because of defendant's characterization of his knife as "little bitty."

Defendant also contends that Judy's testimony as to defendant's threat toward any "guy" with Pamela was inadmissible. As to the merits of this contention see State v. Thompson, 68 N.M. 219, 360 P.2d 637 (1961); State v. Garcia, 83 N.M. 51, 487 P.2d 1356 (Ct.App.1971). We do not reach the merits of this claim because the contention made on appeal was never presented to the trial court. Defendant's only objection was a general one which was made after Judy testified to the date, time and place of the meeting between defendant and Judy, but prior to her testimony, outlined above, as to the details of the meeting.

■ The general objection was " * * * to this entire line of questioning on the grounds that it is irrelevant and immaterial to any issue, that it is an attempt to impeach on collateral matters not relevant or material and that it shows evidence of another crime without there first being a conviction." Such an objection clearly did not alert the trial court to defendant's threat and, thus, did not preserve the question of its admissibility for review. State v. Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App.1970); State v. Harrison, supra; State v. Anaya, 81 N.M. 52, 462 P. 2d 637 (Ct.App.1969). The general objection was insufficient. State v. Carlton, 83 N.M. 644, 495 P.2d 1091 (Ct.App.), decided January 21, 1972.

Defendant asserts that Judy's rebuttal testimony was inadmissible because it was for the purpose of impeaching defendant on the basis of specific acts of wrongdoing after defendant had denied those specific acts. Thus, defendant would invoke cases interpreting § 20-2-4, N.M.S.A.1953 (Repl.Vol. 4) which hold that the cross-examiner is bound by the answers to ques-

tions concerning specific acts of misconduct and may not introduce independent evidence as to that misconduct. See State v. Hargrove, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970).

The act of wrongdoing referred to in Judy's rebuttal testimony was the threat. Defendant's general objection cannot be fairly read as alerting the trial judge to a claim that testimony as to the threat was inadmissible on the basis the State was bound by defendant's denials and could not introduce independent evidence as to the wrongdoing denied. The contention now made is not properly before us for review. State v. Zarafonetis, supra; State v. Harrison, supra.

*Instruction on implied malice.*

After the trial court defined malice and explained the basis for finding malice, it instructed the jury:

"It is within the province of the jury to imply malice in a case where a killing with a deadly weapon is established.

"You may imply malice in this case if you find beyond a reasonable doubt that the killing was perpetrated by means of a deadly weapon."

Defendant contends that the instruction is incomplete and provides a lesser standard for malice than that established by § 40A–2–2, N.M.S.A.1953 (Repl. Vol. 6). As to the merits of this contention, the instruction was approved in State v. Anaya, 80 N.M. 695, 460 P.2d 60 (1969) and State v. McFerran, 80 N.M. 622, 459 P. 2d 148 (Ct.App.1969).

Further, the objection to the instruction was: " * * * that this instruction allows the jury to imply malice in a case of a killing with a deadly weapon and that malice is a specific state of mind that cannot be implied by acts done." The contention now made was not presented to the trial court. State v. Harrison, supra.

The judgment and sentence are affirmed.

It is so ordered.

SUTIN and COWAN, JJ., concur.