This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40148**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ADAM CERVANTEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**John P. Sugg, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Adam Cervantez appeals his convictions of aggravated assault upon a peace officer (deadly weapon), contrary to NMSA 1978, Section 30-22-22(A)(1) (1971). On appeal, Defendant argues that (1) the district court erred in failing to instruct the jury on defense of habitation; (2) the evidence presented was insufficient to support his convictions; (3) his multiple convictions violate double jeopardy; and (4) multiple

errors resulted in cumulative error requiring reversal. For the following reasons, we affirm Defendant's convictions.

**BACKGROUND**

**{2}** After dark on April 22, 2021, four officers from the Ruidoso Downs Police Department went to Defendant's home to execute a bench warrant for failure to appear. Officer Malone, leading Officer Conway, approached the house from the front while the other two officers approached the home from behind. As Officer Malone and Officer Conway approached, they noticed that the home's windows were covered and that a security camera surveyed the driveway.

**{3}** Officer Malone proceeded to enter the enclosed porch at the front of the house to knock on the front door and Officer Conway provided cover from outside the porch. Officer Malone observed another security camera inside the porch as he entered. Before Officer Malone could knock and announce himself, both officers heard Defendant inside the house state that "the cops are here." Officer Malone then loudly knocked on the front door and, after a short pause, began to call out to Defendant saying,

> Adam? Adam? Come to the door man. We don't want to hurt you. Just come talk to us, ok? Adam? Come on man. It's Officer Malone, I was cool with you last time, remember? Just come talk to me. Adam? Come to the door man. Nobody has to get hurt, ok? Adam?

Officer Malone did not announce that other officers were with him, that he was at Defendant's residence to execute an arrest warrant, or that he was an officer for the Ruidoso Downs Police Department. Officer Conway did not announce his own presence. Defendant did not come to the door or reply to Officer Malone's announcements. After calling out to Defendant and receiving no reply for approximately two minutes, Officer Malone struck the porch security camera with a shovel.

**{4}** Immediately after the sound of the impact, two shots were fired inside the house in quick succession. The officers quickly retreated and started making announcements on the loudspeaker of their patrol car for Defendant to surrender. Defendant did not surrender until approximately 12:30 a.m. the next day, at which point Defendant was arrested without further incident.

**{5}** After Defendant was taken into custody, Officers searched Defendant's home and collected five firearms including a semiautomatic handgun which, although loaded, had the capacity to hold four additional bullets. Officers also collected three letters, two appearing to be suicide notes and the last appearing to be a last will and testament. Officers were unable to find any bullet holes at the scene or any bullet casings due to the state of disrepair of the property. Officers did not collect the security cameras, Defendant's phone, or any security recording equipment.

**{6}** Defendant was later indicted by a grand jury for two counts of aggravated assault upon a peace officer (deadly weapon), contrary to Section 30-22-22(A)(1), and one count of resisting, evading or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(D) (1981). At trial, Defendant testified to the events of April 22, 2021, from his perspective. According to Defendant, he was at home playing video games with his headphones on that evening. The volume was turned up very high on the headphones because he is deaf in one ear. He suddenly heard a loud bang outside and a brushing along the side of his house. He stated that he had not heard Officer Malone calling out to him before the bang and did not know police were there. He could not see out of the blocked-up windows and could not see anything on the security cameras because they were nonoperational dummy cameras meant to deter intruders.

**{7}** Defendant testified that the banging noise on the side of his house caused him to go into a paranoid state because he thought someone was trying to get into the house to rob him or hurt him. After hearing the noise, he immediately fired his handgun into the ground to scare off whomever was outside his house. After he fired the shots, he ran back to his laundry room and started calling his family to ask them what he should do. Eventually, Defendant spoke to a crisis intervention operator who helped him exit the house and surrender safely. Defendant testified extensively that he did not know police were present when he discharged his handgun, would never fire his gun at police officers, and would have never fired the gun if he knew the sound he heard was caused by police.

**{8}** A jury convicted Defendant on all three counts. Defendant appeals.

**DISCUSSION**

**{9}** We address each of the arguments Defendant raised on appeal in reverse order for clarity.

**I.      Defendant's Multiple Convictions of Aggravated Assault Upon a Peace Officer Do Not Violate Double Jeopardy**

**{10}** Defendant argues that his two convictions of aggravated assault upon a peace officer, based on the two warning shots he fired in quick succession in his home, are contrary to legislative intent and violate double jeopardy. Defendant acknowledges that this issue was decided in *State v. Roper*, 2001-NMCA-093, ¶ 12, 131 N.M. 189, 34 P.3d 133 (holding that "it is . . . permissible without offending double jeopardy principles to convict and sentence a defendant for two counts of assault for pointing a gun at two persons at the same time"), but argues that *Roper* was incorrectly decided. Because we conclude that "*Roper* is consistent with the principle that our assault statutes are designed to protect distinct victims from mental harm caused by a single act," *State v. Branch*, 2018-NMCA-031, ¶ 31, 417 P.3d 1141, we decline to revisit that decision. Therefore, we reject Defendant's argument that his convictions for two counts of aggravated assault based on firing his handgun in his house and causing both Officer Malone and Officer Conway to fear a battery violate double jeopardy.

## II.    Sufficient Evidence Supports Both of Defendant's Convictions for Aggravated Assault Upon a Peace Officer

**{11}**    Defendant argues that insufficient evidence supports his convictions of aggravated assault upon a peace officer because the State failed to prove that Defendant knew that Officer Malone and Officer Conway were police officers.[1] We conclude that sufficient evidence was presented at trial to support Defendant's convictions.

**{12}**    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶¶ 26, 72, 478 P.3d 880. We review whether substantial evidence exists by viewing "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of th[at] verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{13}**    At trial, the district court instructed the jury that to convict Defendant of aggravated assault upon a peace officer by use of a deadly weapon, the State had to prove beyond a reasonable doubt for each count:

> (1) [D]efendant discharged a firearm; (2) [a]t the time, [the officer] was a peace officer and was performing duties of a peace officer; (3) [D]efendant knew [the officer] was a peace officer; (4) [D]efendant's conduct caused [the officer] to believe [D]efendant was about to intrude on [the officer's] bodily integrity or personal safety by touching or applying force to [the officer] in a rude, insolent or angry manner; (5) [D]efendant's conduct threatened the safety of [the officer]; (6) [a] reasonable person in the same circumstances as [the officer] would have had the same belief; (7)

---

[1]Defendant also asserts that the State failed to present sufficient evidence that Defendant knew that Officer Conway was present at the scene. However, Defendant fails to explain how this argument differs from his claim that the State failed to present sufficient evidence that Defendant knew the police officers were peace officers. Therefore, we decline to assume that a distinction exists and address it no further. See State v. Guerra, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (refusing to review an unclear or undeveloped argument that would require the court to guess at the party's argument); *see also State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (same).

[D]efendant used a firearm; [and] (8) [t]his happened in New Mexico on or about the 22nd day of April, 2021.

Because Defendant limits his sufficiency of the evidence challenge to whether Defendant knew Officer Malone and Officer Conway were police officers, we limit our analysis accordingly.

**{14}** Both Officers testified that as they approached Defendant's residence they heard Defendant say that he knew the cops were there. The jury had the right to consider this testimony and determine whether to believe it. *See State v. Gurule*, 2004-NMCA-008, ¶ 38, 134 N.M. 804, 82 P.3d 975 ("It is up to the jury to weigh the testimony and contradictory evidence and believe or disbelieve any testimony it hears."). This testimony alone was sufficient to support the jury's conclusion that Defendant knew that the people outside his home were police officers. *State v. Hamilton*, 2000-NMCA-063, ¶ 20, 129 N.M. 321, 6 P.3d 1043 ("The testimony of a single witness may legally suffice as evidence to support a jury's verdict." (text only) (citation omitted)). Although Defendant's testimony and other evidence presented at trial may have suggested that Defendant did not know the people outside his home were police officers, we will not reweigh the evidence or substitute our own judgment for the jury's on appeal. *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 ("New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." (alterations, internal quotation marks, and citation omitted)). Therefore, we conclude that sufficient evidence supported Defendant's convictions for aggravated assault upon a peace officer.

### III. The District Court Did Not Err by Determining That Defendant Was Not Entitled to a Jury Instruction on Defense of Habitation

**{15}** Defendant also asserts that the district court erred by denying his request for a jury instruction on defense of habitation. We disagree.

**{16}** The denial of a defendant's requested jury instruction is a mixed question of law and fact which we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "A defendant is entitled to an instruction on [their] theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *State v. Baxendale*, 2016-NMCA-048, ¶ 10, 370 P.3d 813 (internal quotation marks and citation omitted).

**{17}** A defense of habitation instruction requires evidence that "(1) Defendant believed that the commission of a [violent] felony in Defendant's home was immediately at hand, (2) Defendant believed it was necessary to use deadly force against the intruder to prevent the commission of the felony, and (3) Defendant acted [r]easonably." *Id.* ¶ 22;

*see* UJI 14-5170 NMRA. An instruction on defense of habitation is not appropriate unless there is evidence that "the felony the defendant acted to prevent . . . [was] one that would have resulted in violence against the occupants were it not prevented." *Boyett*, 2008-NMSC-030, ¶ 21. If the evidence only supports the conclusion that Defendant acted with lethal force to prevent a non-violent felony, "a defense of habitation instruction would be unwarranted." *Id.*

**{18}** Viewing the evidence in the light most favorable to Defendant, there was no evidence that the act Defendant was seeking to prevent by firing his handgun was a violent attack. There was no evidence that Defendant perceived or observed anything that constituted a felony much less a violent felony before he fired his handgun. In other words, the evidence adduced at trial showed that Defendant fired his gun in response to a loud sound on the side of his house—without further evidence of an attack or forced entry. Because no evidence supported the necessary element of defense of habitation instruction requiring that Defendant believe a violent felony was immediately at hand, the district court did not err in denying Defendant's requested instruction.

## IV.    Cumulative Error Did Not Deny Defendant His Right to a Fair Trial

**{19}** Lastly, Defendant argues that the district court committed multiple evidentiary errors that resulted in cumulative error requiring reversal of his convictions. Specifically, Defendant argues that the district court erred by (1) admitting evidence of Defendant's suicidal ideations, (2) admitting evidence of Officer Malone's prayer, (3) allowing the State to inappropriately berate Defendant during cross-examination, and (4) allowing the State to ask leading and repetitive questions during the direct examination of Officer Malone and Officer Conway; and that these errors, in the aggregate amounted to cumulative error.

**{20}** Defendant first argues that it was error for the district court to admit evidence of Defendant's suicidal ideations. However, Defendant fails to specify what evidence and testimony in the record he is challenging on appeal, fails to identify where in the record his challenge to this evidence was preserved, and fails to cite authority supporting his assertion that the unidentified evidence was so prejudicial that it substantially outweighed the evidence's probative value. Defendant next argues that the district court erred by admitting evidence of, and allowing Officer Malone to testify to, the prayer he made after he heard Defendant fire his gun. Again, he fails to point us to the alleged error in the record proper, disregards the elements of the crime with his argument that the evidence had "essentially no probative value," and fails to explain how, this purported error amounts to fundamental error.  Thirdly, Defendant argues that the district court erred by allowing the prosecutor to impermissibly berate him with his prior inconsistent statement and insert his own disdain for Defendant into the trial through his tone and sarcasm. Once again, he fails to explain how the State's impeachment of Defendant was improper and cites to no authority supporting such a conclusion.[2]

---

[2]Even assuming we could adequately review Defendant's argument, we see no error in allowing the State to confront Defendant with his prior inconsistent statement and confirm its implication. "Any party . .

**{21}** Defendant's arguments are undeveloped, unclear, and unsupported and we will not entertain such arguments on appeal. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.); *State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (stating that "[a] party cannot throw out legal theories without connecting them to any elements and any factual support for the elements" (internal quotation marks and citation omitted)); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Therefore, we conclude Defendant failed to meet his burden to demonstrate error. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("[I]t is Defendant's burden on appeal to demonstrate any claimed error below.").

**{22}** Lastly, Defendant argues that the district court erred by allowing the State to ask leading and repetitive questions during Officer Malone's and Officer Conway's direct examinations and that this error along with the other claimed errors constitute cumulative error in the aggregate. Because we conclude that Defendant failed to meet his burden demonstrating that any of the other claimed errors, were in fact error, there can be no cumulative error. *See State v. Ortega*, 2014-NMSC-017, ¶ 53, 327 P.3d 1076 ("The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial."); *State v. Roybal*, 2002-NMSC-027, ¶ 34, 132 N.M. 657, 54 P.3d 61 ("Because Defendant only complains of one error at trial, we reject his cumulative error claim."); *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (alterations, quotation marks, and citation omitted)).

## CONCLUSION

**{23}** For the foregoing reasons, we affirm Defendant's convictions.

**{24}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

---

. may attack [a] witness's credibility." Rule 11-607 NMRA. This is because "[e]vidence that reflects on a witness's credibility is relevant and therefore admissible." *State v. Salazar*, 2023-NMCA-026, ¶ 13, 527 P.3d 693 (internal quotation marks and citation omitted). "[W]hen a defendant testifies, he is subject, within the limits of certain rules, to cross-examination the same as any other witness." *State v. Gutierrez*, 2003-NMCA-077, ¶ 13, 133 N.M. 797, 70 P.3d 787. "He is not entitled to have his testimony falsely cloaked with reliability by having his credibility protected against the truth-searching process of cross-examination." *State v. Duran*, 1972-NMCA-059, ¶ 10, 83 N.M. 700, 496 P.2d 1096. Impeachment by prior inconsistent statement is a proper way to attack a witness's credibility. *Salazar*, 2023-NMCA-026, ¶ 13.

**KATHERINE A. WRAY, Judge**